IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**DANNY HENSLEY,**

      **Movant,**

v.                                                      Case No. 2:16-cv-05388
                                                       Case No. 2:06-cr-00150

**UNITED STATES OF AMERICA,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Movant, Danny Hensley's (hereinafter "Defendant") Emergency Motion to Vacate, Set Aside or Correct Sentence (ECF No. 79). This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On May 12, 2005, Defendant pled guilty in this United States District Court of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), which carried a maximum sentence of ten years in prison. However, at sentencing, which occurred on August 13, 2007, this Court found that Defendant had committed three prior felony offenses categorized as "violent felonies" under 18 U.S.C. § 924(e)(2)(B) (the "Armed

Career Criminal Act" or "ACCA").[1] As specified in the Indictment, Defendant was previously convicted of the following felony offenses:

- a 1989 grand larceny in violation of W. Va. Code § 61-3-13
- a 1992 aggravated robbery in violation of W. Va. Code § 61-2-12(a)(2)
- a 1997 armed robbery in violation of W. Va. Code § 61-2-12(a)(2)
- a 2003 wanton endangerment in violation of W. Va. Code § 61-7-12

(ECF No. 79 at 2). As a result of these prior convictions, Defendant was classified as an armed career criminal and, thus, was subject to a mandatory minimum sentence of fifteen years of imprisonment, pursuant to 18 U.S.C. § 924(e)(1) and, consequently, received a sentencing enhancement from a level 28 to a level 33 under section 4B1.4(b)(3)(B) of the United States Sentencing Guidelines.[2] Defendant did not object to the armed career criminal designation at sentencing, and he was sentenced to serve 210 months in prison, followed by a five-year term of supervised release. (Judgment, ECF No. 71).

---

[1] The ACCA provides for a sentencing enhancement for a felon possessing a firearm or ammunition when the defendant has three prior convictions for violent felonies and/or serious drug offenses. 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The ACCA defines a "violent felony" as a crime punishable ... by imprisonment for a term exceeding one year ... that

    (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii)    is burglary, arson, or extortion, involves use of explosives, **or otherwise involves conduct that presents a serious potential risk of physical injury to another.**

18 U.S.C. § 924(e)(2)(B) (Emphasis added). The bolded portion of this definition is known as the Act's "residual clause."

[2] As applied herein, section 4B1.4(b)(3)(B) of the Guidelines states in pertinent part that, "[t]he offense level for an armed career criminal is the greatest of . . . 33, otherwise." U.S. SENTENCING GUIDELINES MANUAL § 4B.14(b)(3)(B). Defendant was granted a three-level reduction for acceptance of responsibility and, thus, his total offense level was reduced to 30 with a criminal history category of VI, rendering a guideline range of 180-210 months of imprisonment (due to the 180-month mandatory minimum).

Defendant did not appeal his conviction or sentence to the United States Court of Appeals for the Fourth Circuit.

On June 26, 2015, the Supreme Court decided *United States v. Johnson*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), holding that the residual clause of the ACCA is unconstitutionally vague and further finding that imposition of an increased sentence thereunder violates due process. As noted by the United States herein, the Supreme Court specifically excluded the remainder of the ACCA from its holding in *Johnson II*. The Court stated, "Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* at 2563. Thus, a prior conviction may still qualify as a violent felony if it meets the criteria of the element of force clause contained in section 924(e)(2)(B)(i) or the enumerated offenses of burglary, arson, extortion or crimes involving explosives under section 924(e)(2)(B)(ii).

On April 18, 2016, the Supreme Court decided *Welch v. United States*, 136 S. Ct. 1257 (2016), in which the Court determined that *Johnson II* changed the substantive reach of the ACCA, and therefore was a substantive, rather than a procedural decision, because it affected the reach of the underlying statute rather than the judicial procedures by which the statute was applied. Therefore, the Court held that *Johnson II* announced a new substantive rule that applies retroactively to cases on collateral review. On May 6, 2016, the Office of the Federal Public Defender was appointed to represent Defendant. (ECF No. 77). On June 14, 2016, Defendant, by counsel, filed the instant Motion to Correct Sentence under 28 U.S.C. § 2255 (ECF No. 79), asserting that, after *Johnson II,* none of his predicate convictions qualify as violent felonies under the ACCA.

On August 4, 2016, the United States of America ("the government") filed a Response to Defendant's section 2255 motion. The government does not rely upon Defendant's grand larceny conviction as a predicate conviction for the ACCA enhancement. Thus, the undersigned will not further address it herein. Nonetheless, the government contends that Defendant's prior aggravated and armed robberies and his wanton endangerment conviction meet the force clause of the ACCA's definition of a violent felony.[3] Thus, the government contends that Defendant remains an armed career criminal and is not entitled to any relief under section 2255.

On August 19, 2016, Defendant, by counsel, filed a Reply (ECF No. 85) disputing the government's contentions that his predicate convictions meet the force clause of the ACCA. He reiterates his argument that he does not qualify as an armed career criminal and, thus, his sentence is unconstitutional after *Johnson II*. The undersigned will address these arguments as necessary *infra*.

## DISCUSSION

### A. Defendant's West Virginia robbery convictions are violent felonies.

In 1992, Defendant was convicted in West Virginia of the offense of aggravated robbery under W. Va. Code § 61-2-12, which, at that time, stated as follows:

> If any person commit, or attempt to commit, robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or by other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery by any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and upon conviction,

---

[3] None of Defendant's convictions qualify as enumerated offenses under the ACCA.

      shall be confined in the penitentiary not less than five nor more than eighteen years.

W. Va. Code § 61-2-12. Thus, the statute addresses two alternative classes of the offense, also distinguishable by two separate penalties. The government's briefing recognizes that the first portion of the statute is known as "aggravated robbery," and the remainder of the statute addresses all other (or "non-aggravated") robberies. (ECF No. 84 at 7). Defendant's 1997 conviction for "armed" robbery also fell within the first portion of the same statute.

      Defendant contends that this offense does not meet the force clause and, thus, is not a violent felony under the ACCA, because it can be committed without the necessary level of force required under *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*").[4] Defendant first notes that the statute does not actually define robbery, which requires the court to defer to the common law definition thereof. The elements of common law robbery are: "(1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with the intent to steal the money or goods." *See State v. Wilkerson*, 738 S.E.2d 32, 37 (W. Va. 2013) (quoting *State v. Harless*, 285 S.E.2d 461, 462 (W. Va. 1981)).

      Relying upon *Wilkerson*, Defendant contends that "'it is possible to commit robbery . . . without force' because it 'can be perpetrated by simply threatening the use of force.'" 738 S.E.2d at 38. (ECF No. 79 at 5). Defendant further contends that the language "force or putting him in fear" are alternative means, not alternative elements.

---

[4] *Johnson I* defined "force" in the context of the ACCA's "violent felony" definition to be "violent force – that is force capable of causing physical pain or injury to another person." 559 U.S. at 140. Accordingly, that definition is used to gauge whether any predicate conviction qualifies as a "violent felony" under the force clause.

5

*See State v. Coulter*, 288 S.E.2d 819, 820 (W. Va. 1982) (robbery "may be committed without force by putting a person in fear"). (*Id.*)

Defendant further asserts that the necessary level of force needed to commit robbery in West Virginia allows for minimal contact with the victim. Thus, he contends that such force does not meet the level of physical force required to be a violent felony under the ACCA. In support of this contention, Defendant relies on the Fourth Circuit's decision in *United States v. Gardner*, 823 F.3d 793 (4th Cir. 2016), in which the Court found that, because a North Carolina burglary statute allowed *de minimis* contact to satisfy an element requiring "violence or fear," such crime did not satisfy the ACCA force clause. Defendant seeks a similar finding here. (*Id.* at 5-7).

Instead, the government argues that aggravated robbery in West Virginia is recognized as one of the most serious and violent offenses, as evidenced by its harsh penalty, with greater culpability than robbery committed by non-violent means. (ECF No. 84 at 7-8); *see also State v. Glover*, 355 S.E.2d 631, 640 (1987) ("Aggravated robbery has always been regarded as a crime of the gravest character."); *State v. Ross*, 402 S.E.2d 248, 251 (W. Va. 1990) ("Aggravated robbery in West Virginia has been recognized as a crime that involves high potentiality for violence and injury to the victim involved."). The government further contends that, in *Harless, supra*, the Supreme Court of Appeals of West Virginia (the "SCAWV") found that the West Virginia robbery statute did not redefine the elements of robbery under common law which "could be accomplished either by actual physical force or violence inflicted on the victim or by intimidating the victim by placing him in fear of bodily injury." 285 S.E.2d at 462. (*Id.* at 7-8). Thus, the government contends:

6

> [I]n order for a person to be guilty of aggravated or armed robbery in West Virginia, he or she must have committed a robbery by either committing violence to the person being robbed, or by using a threat of deadly force by presenting a firearm or other deadly weapon. Federal courts have consistently held that a "taking by force and violence entails the use of physical force," and "a taking by intimidation involves the threat to use such force." *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) (internal quotations and citations omitted). *See also United States v. Hill, supra*, 2016 WL 4120667 *6 (explaining that the use or threatened use of physical force by putting the victim in fear of injury through such means is sufficient in holding that a Hobbs Act robbery is categorically a crime of violence under 18 U.S.C. § 924(c)(3)).

(*Id.* at 8-9).

The government further asserts that Defendant's reliance on *Gardner* is misplaced and that aggravated robbery in West Virginia requires more than *de minimis* force. The Response states, "Aggravated or armed robbery under W. Va. Code § 61-2-12 explicitly involves a taking by physical force (*i.e.,* "committing violence to the person") or the threat of physical force (*i.e.*, "the presentation of a deadly weapon.")." (*Id.* at 9). Thus, the government contends that West Virginia aggravated robbery statute easily meets the ACCA's force requirement. (*Id.*)

Defendant's Reply reiterates his argument that West Virginia's definition of "force" allows for the same minimal level of contact found by the Fourth Circuit to be insufficient in *Gardner*, and that other appellate courts have made similar findings concerning other state statutes. (ECF No. 85 at 4). Defendant further contends that none of the means of committing aggravated or armed robbery set forth in the statute requires the violent force that *Johnson I* demands. (*Id.* at 5). In particular, Defendant contends that "the presence of a firearm does not automatically convert an offense that does not require force into one that does." (*Id.* at 5-6). The Reply further states:

7

> That the statute requires "the threat of deadly force by the presenting of a firearm or other deadly weapon," does not change the outcome. That is because "the presence of a firearm is not required for a conviction of aggravated robbery." *State v. Phillips*, 485 S.E.2d 676, 681 (W. Va. 1997). Instead, "[i]t is sufficient that the robber threatened the use of a firearm and the victims reasonably believed that he had possession of a firearm." *Ibid.* Thus, aggravated robbery includes convictions where the defendant uses "simulation of firearm by gesturing with hand in pocket," rather than actual use of a firearm. *State v. Combs*, 338 S.E.2d 365, 468 (W. Va. 1985).

(*Id.* at 5-6). Thus, Defendant contends that "[t]he offense of aggravated robbery in West Virginia, even when a firearm is involved, lacks an element of intentional violent force" and "cannot qualify as a violent felony under the ACCA's force clause." (*Id.* at 6).

The statutory language of W.Va. Code § 61-2-12 clearly demonstrates that the force required to be used or threatened is more than minimal, including strangulation, beating, and threat of a deadly weapon. In *Harless*, the SCAWV specifically explained that "the distinguishing feature between aggravated and nonaggravated robbery . . . is that the former requires the utilization of physical force or the use of a deadly weapon against the victim; the latter crime requires only that the victim be placed in fear of bodily injury." 285 S.E.2d at 713. The *Harless* Court further found that "aggravated robbery is defined as the unlawful taking and carrying away of money or goods from the presence of another, <u>by the use of force or violence on the victim</u>, or through the use of a dangerous or deadly weapon or instrumentality, and with the intent to steal such property." *Id.* at 712 n.8.

On October 12, 2017, the Fourth Circuit decided *United States v. Salmons*, 873 F.3d 466 (4th Cir. 2017), holding that West Virginia aggravated robbery is categorically a crime of violence under the career offender guideline. For similar reasons, the undersigned believes that West Virginia aggravated or armed robbery satisfies the ACCA's force clause. Accordingly, the undersigned proposes that the presiding District Judge

8

**FIND** that Defendant's 1992 West Virginia conviction for aggravated robbery and his 1997 West Virginia conviction for armed robbery are violent felonies that qualify as predicate offenses for Defendant's ACCA enhancement.

### B. Defendant's wanton endangerment conviction no longer qualifies as a violent felony under the ACCA.

Defendant further contends that his 2003 conviction in West Virginia for wanton endangerment does not qualify as a violent felony after *Johnson II* because it does not involve an element of violent force. (ECF No. 79 at 11). In 2003, "[a]ny person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another" was guilty of wanton endangerment. *See* W. Va. Code § 61-7-12.

Defendant further notes that, in *United States v. Sumpter*, No. No. 2:15-cr-00067, 2016 WL 398223 (S.D. W. Va. Jan. 6, 2015), the Honorable John T. Copenhaver, Jr. found that West Virginia wanton endangerment did not qualify as a crime of violence under the United States Sentencing Guidelines' career offender provision.[5] In *Sumpter*, the Court recognized the essential elements of wanton endangerment to be: (1) the defendant; (2) did wantonly perform; (3) with a firearm; (4) an act; (5) creating substantial risk of; (6) death or serious bodily injury to another. *Id.* at *2; citing *State v. White*, 490 S.E.2d 636, 640 (W. Va. 1997). Defendant further states that Judge Copenhaver noted that the SCAWV has "interpreted the 'act' element broadly." *Id., citing State v. Hulbert*, 544 S.E.2d 919, 930 (W. Va. 2001). (ECF No. 79 at 7-8).

---

5  Defendant's brief acknowledges that courts routinely interchangeably apply case law pertaining to both the ACCA's "violent felony" definition and the career offender provision's "crime of violence" definition, given the substantial similarity of the provisions. *See. e.g., United States v. Montez-Flores*, 738 F.3d 357, 363 (4th Cir. 2013). (ECF No. 79 at 7 n.3).

9

Accordingly, Defendant contends that, as found in *Sumpter*, the act element "can be satisfied by a broad range of conduct involving a firearm, including brandishing a weapon or pointing an unloaded firearm at another person under circumstances that do not involve use or threatened use of physical force against the person of another." 2016 WL 398223 at *3.  (*Id.* at 8).  Defendant further contends that federal courts "routinely analyze similar statutes under the residual clause rather than the elements clause precisely because the elements of those crimes do not require the use, attempted use, or threatened use of force."  *Id.* (other citations omitted).  Accordingly, Defendant contends that, after *Johnson II*, West Virginia wanton endangerment does not qualify as an ACCA predicate offense.  (*Id.*)

The government's Response asserts that, "[c]onsistent with the reasoning in the recent ruling in *Voisine v. United States*, 136 S. Ct. 2272 (2016), the West Virginia wanton endangerment statute should be construed as a crime of violence [sic; violent felony] under the ACCA's 'force' clause."  (ECF No. 84 at 12).  The Response further states:

> In *Voisine*, the Supreme Court analyzed 18 U.S.C. § 922(g)(9), which prohibits a person convicted of a misdemeanor crime of domestic violence from possessing a firearm, and 18 U.S.C. § 921(a)(33)(ii), which defines a misdemeanor crime of domestic violence as having as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon . . ."
>
> In analyzing these statutes, the Court in *Voisine* decided an issue "expressly" left open in *United States v. Castleman*, 134 S. Ct. 1405 (2014). In *Castleman*, the Court held that a knowing or intentional assault was a crime of violence because it involved the "use" of force, and, thus, persons convicted of such a misdemeanor crime were prohibited from possessing firearms under 18 U.S.C. § 922(g)(9).  The Court reserved the question of whether a reckless assault also qualified as a "use" of force crime.  *Id.* at 1422 n.8.  The *Voisine* Court resolved a Circuit split in deciding that reckless assault did involve the "use" of force, and therefore qualified as a

10

> misdemeanor crime of violence under 18 U.S.C. § 922(g)(9). The analysis in that case applies here.

(ECF No. 84 at 12-13). The government contends that the *Voisine* Court held that the "use of physical force" element in section 922(g)(9) "means the act of employing, and does not require that the person applying force have the purpose or practical certainty that it will cause harm." (*Id.* at 13). The government's Response brief further states:

> As the Court stated, "[n]othing in the word "use" . . . indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." *Id.* at 2278. That is, reckless behavior involves "acts undertaken with awareness of their substantial risk of causing injury" and causes harm which is the "result of a deliberate decision to endanger another." *Id.* at 2279. Therefore, reckless domestic assault satisfied the "use" of force clause and qualified as a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9).
>
> The language of 18 U.S.C. § 922(g)(9) is very similar to the ACCA's force clause, which refers to "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e) . . . . Under the reasoning in *Voisine*, even if the West Virginia wanton endangerment statute only required reckless behavior, it, too, satisfies the force clause of the ACCA and is a crime of violence [sic; violent felony]. This statute involves "acts undertaken with awareness of their substantial risk of causing injury," and prohibits behavior causing harm which is the "result" of a deliberate decision to endanger another." *Voisine*, 136 S. Ct. at 2279.

(*Id.* at 14).

The government further asserts that this court should not rely on the decision in *Sumpter*, because that decision emphasized a line of cases which "suggest[ed] that the 'act' requirement of the [wanton endangerment statute] can be satisfied by a broad range of conduct involving a firearm, including brandishing a weapon or pointing an unloaded firearm at another person under circumstances that do not involve use or threatened use of physical force against the person of another." 2016 WL 398223 at *3. (*Id.* at 15). The government contends that *Voisine*, which was decided after *Sumpter*, "clarifies that

11

the person applying force need not have the 'purpose or practical certainty' that it will cause harm." 136 S. Ct. at 2279. (*Id.*) Accordingly, the government contends that the West Virginia wanton endangerment statute requires an act of force that satisfies the force clause of the ACCA, even if it is only "recklessly taken." (*Id.*)

Defendant's Reply contends that, by its own language, *Voisine* does not extend beyond the context of domestic violence, and that the Fourth Circuit has held that, in order to be violent force, such force must be intentionally used by the defendant. (ECF No. 85 at 6-7) (citing *Garcia v. Gonzales*, 455 F.3d 465 (4th Cir. 2006) (finding that an "aggravated felony" under 18 U.S.C. § 16(b) required intentional conduct) (other citations omitted). Defendant's Reply further states:

> To understand *Voisine* and why it does not do what the Government argues it does, one must first look to the case upon which it builds, *United States v. Castleman*, ____ U.S. ____, 134 S. Ct. 1405 (2014). Both cases involve interpretation of the definition of misdemeanor crime of domestic violence found in 18 U.S.C. § 921(a)(33)(A). At issue in *Castleman* was the amount of force required to meet that definition. Castleman argued (and the Sixth Circuit had agreed) that the amount of force necessary was the same as the Supreme Court identified in *Johnson [I]* – that is, "violent" force. *Id.* at 1409. The Supreme Court rejected that argument, defining the minimum level of force required to be the same as the common law definition of force, "namely, offensive touching." *Id.* at 1410. In reaching that conclusion, the Supreme Court emphasized the differing contexts of the two uses of "force" by Congress. The Court "declined to read the common-law meaning of "force" into ACCA's definition of "violent felony" because we found it a "comical misfit" with the defined term. *Ibid*, quoting *Johnson [I]*, 599 U.S. at 145.

(ECF No. 85 at 7-8). Defendant's Reply goes on to describe the distinction the Supreme Court made between the common law meaning of "force" used in defining domestic violence offenses and "violent force" used under the ACCA. The Reply further states:

> In other words, "'domestic violence' encompasses a range of force broader than that which constitutes violence *simpliciter*." [134 S. Ct. at 1411 n.4].

12

> As an example, the Court cites "a squeeze of the arm [that] causes a bruise," as something "hard to describe . . . as violence" but that "is easy to describe as 'domestic violence'." *Id.* at 1412 (internal quotations and citation omitted).

(*Id.* at 8). Defendant's Reply concludes that:

> The Supreme Courts own words undermine the Government's argument. In both *Castleman* and *Voisine* the Court emphasized the different "contexts and purposes" of the statute at issue in those cases and classifications such as ACCA. *Voisine* specifically held that its holding did not reach the similar language of 18 U.S.C. § 16, which is identical to the operative language of ACCA and the Sentencing Guidelines crime of violence definition. In light of that limitation, *Voisine* cannot be read as undermining the wall of authority that ACCA and similar provisions require the intentional use of force – the weight of which the Supreme Court noted in *Castleman*, 134 S. Ct. at 1414 fn.8. Fourth Circuit case law requires intentional use of violent force and this Court is bound by that precedent.

(*Id.* at 9). Defendant further contends that the decision in *Bennett v. United States*, No. 1:16-cv-00251, 2016 WL 3676145 *4 (D. Me., July 6, 2016) is instructive, finding that "the common-law interpretation of 'use' announced in *Voisine* cannot be read to override the already-cited precedents holding that recklessness is an insufficient mens rea for purposes of ACCA." (*Id.* at 9-10).

Whether West Virginia wanton endangerment qualifies as a violent felony under the ACCA after *Johnson II* appears to be a matter of first impression. While the elements of wanton endangerment appear to render it a violent felony under the residual clause, the elements do not appear to include the use, attempted use, or threatened use of physical force as defined under the ACCA. Moreover, as noted by Judge Copenhaver in *Sumpter*, the "act" element can be satisfied by a broad range of conduct involving a firearm, some of which do not require a use of physical force that rises to the level required by *Johnson I*. The undersigned is not persuaded by the government's argument that the

13

decisions in *Castleman* and *Voisine* render the level of force, if any, needed to commit wanton endangerment equal to the violent, physical force, as defined in *Johnson I*, in order for wanton endangerment to qualify as a violent felony under the ACCA.

Thus, the undersigned believes that the reasoning in *Sumpter* should be extended to the analysis of West Virginia wanton endangerment under the ACCA. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that West Virginia's crime of wanton endangerment involving a firearm does not have as an element the use, attempted use, or threatened use of physical force, and is not a violent felony under the ACCA.

### C. Defendant is entitled to relief under section 2255.

Upon review of the record in light of *Johnson II* and *Welch*, the undersigned proposes that the presiding District Judge **FIND** that, because Defendant's West Virginia wanton endangerment conviction no longer qualifies as a "violent felony" under section 924(e)(2), he does not meet the criteria to be an armed career criminal. As a result, Defendant's current sentence is "in excess of the maximum authorized by law" and "was imposed in violation of the Constitution or laws of the United States." Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to relief under 28 U.S.C. § 2255 concerning his sentence.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 79) and vacate and set aside Defendant's judgment. In accordance

with 28 U.S.C. § 2255(b), the District Court may then discharge Defendant, resentence him, or correct his sentence as may appear appropriate.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant, and to transmit a copy to counsel of record.

July 19, 2018

Dwane L. Tinsley
United States Magistrate Judge

15